No. 39,189

H. A. HOLMES and DEWEY SHELDON, *Appellants,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MEADE; KATHLEEN CARMICHAEL, County Treasurer of Meade County, Kansas; MERTILLA TOWNSHIP, Meade County, Kansas; PLAINS CEMETERY DISTRICT of Meade County, Kansas; CONSOLIDATED SCHOOL DISTRICT JOINT No. 74 of Meade and Seward Counties, Kansas, also known as JOINT COMMON SCHOOL DISTRICT No. 74, Meade and Seward Counties, Kansas, THE STATE COMMISSION OF REVENUE AND TAXATION, and THE STATE OF KANSAS, *Appellees.*

(267 P. 2d 523)

Opinion filed March 6, 1954.

*E. Keith Beard,* of Meade, argued the cause and *Daniel J. Wilson,* of Meade, was with him on the briefs for the appellants.

*Wilbur G. Leonard,* of Council Grove, argued the cause and *John W. Dunn,* of Arkansas City, was with him on the briefs for the appellees, The State Commission of Revenue and Taxation; *Ernest Vieux,* of Meade, was on the briefs as county attorney of Meade county.

The opinion of the court was delivered by

SMITH, J.: This was an action wherein plaintiffs asked the trial court to vacate an order of the state commission of revenue and taxation, in which order the commission refused to refund to plaintiffs taxes they had paid under protest, and for judgment against the county commissioners of Meade county for the amount of the taxes. Judgment was for defendants. Plaintiffs have appealed.

The point involved is the tax situs of a herd of cattle. About many of the controlling facts there is no dispute. The plaintiffs are residents of Plains, Kansas. Sheldon owns land in Texas and in Meade County, Kansas. In the latter part of December, 1950, they

assembled a herd of 456 cattle in Mertilla township, Meade county. This herd was held a few days on the farm of Sheldon in Meade county for the purpose of branding, dehorning and generally preparing them for winter feeding. Sheldon had a considerable amount of ensilage on this farm. About January 4, 1951, the cattle were shipped to Texas, where they were kept on Sheldon's wheat pasture. On April 9, they were again shipped to Copeland, Kansas. They arrived there on April 11, 1951, and on the following day were taken to Sheldon's farm in Meade county, Mertilla township. They remained there until sold. One purpose in holding them at the Sheldon farm was to feed them a silo and a half of silage Sheldon had there. The last ones were sold on May 8, 1951. Sheldon was assessed on or about April 12. There was some discussion at that time about whether these cattle had been assessed in Texas. On June 28, 1951, the county clerk of Meade county, acting pursuant to G. S. 1949, 79-1412, notified Holmes and Sheldon that she had placed this herd on the tax rolls of Mertilla township, Meade county; that a tax of $799.66 had been levied and assessed against them. On December 19, 1951, plaintiffs paid this amount to the county treasurer and at the same time filed a written protest, pursuant to G. S. 1949, 79-2005. Thereafter plaintiffs filed their application to the state commission of revenue and taxation for relief of a tax grievance. The commission denied relief. This action was filed in the district court of Meade county on May 14, 1952, against all the proper officials of the various taxing districts and the state commission. Judgment was entered for defendants—hence this appeal.

No argument is made but that the proper procedural steps were taken.

The protest filed when the taxes were paid set out the facts about as they have been stated here and in addition that the cattle in question were rendered for taxation in Texas about May 1, 1951; about April 11, 1951, were billed to Kansas City, Mo., with stopover privileges for feeding at Copeland and Dodge City, Kansas; that they never acquired a tax situs in Meade county; that the herd was not temporarily outside the limits of Kansas, as the term was used in G. S. 1949, 79-304, for the reason that it was the intention of the protesting taxpayers to keep them in Texas until they were ready to be shipped to market; that the herd was only brought into Kansas to be assembled and was never maintained in Kansas; that it was not usually kept in Kansas as such term was used in the

statutes; that by reason of the facts stated the levy of a tax in question was illegal and was paid under protest.

The application for relief from a tax grievance filed with the state commission of revenue and taxation set out the facts about the assessment and levy, referred to the protest already discussed herein and alleged that the tax was illegal and void.

The commission after hearing evidence and arguments found that Sheldon and Holmes acquired the cattle in Kansas prior to January 1, 1951; shipped them to Texas on January 4, 1951, for the purpose of winter pasturing; returned them to Kansas about April 10, 1951; and kept them in Meade county until they were all sold on May 8, 1951; they were not in Texas on January 1, the assessment date in that state; were not listed in Texas until the county clerk of Meade county had attempted to assess them in Meade county; they were not listed in Texas until May 1, 1951, after they had been removed therefrom; that Meade county, Kansas was the place where they were usually kept and acquired a tax situs there.

The protest was denied and the county treasurer was ordered to distribute the money to the various taxing districts. All these proceedings were had pursuant to the provisions of G. S. 1949, 79-2005. No question is raised as to their regularity.

The petition in district court first set out the matters about which there was no dispute. It then set out five separate findings of the commissioner and alleged that they were erroneous and constituted an abuse of discretion on the part of the commissioner.

The petition then alleged the commission received immaterial and prejudicial evidence and used it as a basis for making its order and the tax was illegal and void on account of the matters pleaded.

The prayer was for an order vacating the order of the commission and for judgment against the board of county commissioners for the amount of the tax.

The commission in its answer denied generally the allegations of the petition, that attacked the findings of the commission and alleged as a fact that the cattle did have a tax situs in Mertilla township for the year in question under G. S. 1949, 79-304. The actual effect of this answer was a general denial of the controversial issues presented by the petition.

At the trial some evidence was introduced. By agreement a certified copy of the transcript of the proceedings before the commission was introduced.

The court found the tax situs of the cattle was in Meade county, Mertilla township, and they were properly assessed there and ordered the protest be denied. Judgment was entered accordingly.

The plaintiffs appealed from all adverse rulings, findings, conclusions and orders, and from the judgment.

The specifications of error are that the court erred in holding the evidence sufficient to show the cattle had a tax situs in Mertilla township, Meade county; in failing to overrule the order of the commission; in ordering the county treasurer to distribute the money involved to the various taxing units; in denying plaintiffs' tax protest; and in overruling plaintiffs' motion for a new trial.

In regard to the last mentioned specification, the overruling of plaintiffs' motion for a new trial, it may be said in passing, plaintiffs did not bring such a motion here in the record. They did not mention it in the notice of appeal and only briefly mention it in their brief.

Plaintiffs argue on their first specification the court erred in holding the evidence sufficient to show the cattle had a tax situs in Meade county; they state at the outset that four statutes are involved, that is, G. S. 1949, 79-316, 79-316b, 79-316c and 79-304. As a matter of fact the commission in its answer alleged that the cattle had a tax situs in Meade county under G. S. 1949, 79-304. Their brief in this court is on that theory. Although it answers the arguments of plaintiffs on the other statutes, we find it necessary to consider only that section. That section deals with place of listing and provides in part as follows:

"Animals and farming implements shall be listed and taxed where usually kept; . . . In case animals and farming implements are temporarily outside the limits of the state, then said animals and implements shall be listed and taxed in the county, township and school district where the owner resided on the first day of March. All animals and farming implements that do not have their tax situs in accordance with the preceding provisions of this section, or as provided in other statutes, shall be assessed and taxed in the taxing district wherein the owner has his domicile."

In dealing with the question of whether the cattle acquired a tax situs in Meade county under this statute, plaintiffs argue the period of ownership, being from late in December, 1950, to early in May, 1951, and the length of time in Kansas, being a few days in December, 1950, and until January 4, 1951, and from April 11, 1951, to May 8, 1951, compel a conclusion as a matter of fact that they were not "ordinarily maintained" or "usually kept" in Meade county.

They further point out that during 1951 the cattle were in Texas three-fourths of the entire time plaintiffs owned them. They argue such a circumstance compels a finding that they were not temporarily out of the state of Kansas on March 1, 1951, so as to come under the quoted provisions of G. S. 1949, 79-304.

The entire course of plaintiffs dealing with this herd must be viewed as one operation from the time it was first assembled on the farm of one of plaintiffs in December, 1950; then shipped to Texas for the wheat pasture; then in April shipped again to Kansas, to be finished for market on silage owned in Meade county by one of plaintiffs, when so viewed the admitted facts warranted the commission in finding Meade county was the place where the cattle were usually kept and that they were temporarily outside the limits of the state on March 1, 1951.

This case is analogous to *Smith v. Mason*, 48 Kan. 586, 30 Pac. 170. There the taxpayer purchased cattle and sent them to Lincoln county to winter. They were delivered to plaintiff at his ranch in Ottawa county, where they were for fifteen days, then sent to Lincoln county and kept until April 7, about five months. Then they were returned to Ottawa county and kept seven months. We held they had a tax situs in Ottawa county. We said:

"From these facts, we think it is manifest that the cattle were usually kept in Ottawa County. This case differs from the case of *Graham v. Comm'rs of Chautauqua Co.*, 31 Kas. 473. In that case the cattle were held about an equal time in each township; but there was nothing in that case showing that the owner had a home ranch in either township, and nothing to indicate that the cattle were to be taken from Belleville township where they were assessed, back to Sedan township, where the owner claimed they should have been assessed; while in this case the owner had a home ranch in Ottawa county where he usually kept his cattle and when these cattle were taken from there to Lincoln county it was with the intention of returning them to the home ranch in the spring."

The trial court by its general finding in favor of the defendants found all the controverted facts in their favor.

But little more need be said in this opinion. The petition points out some findings of the commission which they argue were based on evidence it should not have received. We have examined the record and it appears this evidence was in the main brought out by plaintiffs themselves. It is the judgment of the trial court we are reviewing. By stipulation the transcript of the record before the commission was introduced at the trial in district court. No question appears to have been raised as to the admissibility of any evi-

dence contained in it. The motion of plaintiffs for a new trial was not brought here in this record. We have no way of knowing what objections were made to the introduction of evidence at the trial. Besides, we are not reviewing the order of the commission.

It does appear that the hearing before the commission covered a broad field, as such inquiries should. It appeared the cattle were shipped to Texas on January 4, 1951. Since January 1 is the taxing day in Texas it would seem the plaintiffs might have known this and have intended to escape paying taxes in Texas, then they were shipped from Texas back to Kansas about thirty days after March 1, the taxing day in Kansas. The assessor in Meade county had some conversation with plaintiffs about April 11 and 12. Plaintiffs admit in their pleading that they rendered these cattle for taxation in Texas on April 15, 1951, some three or four days after the point was raised in Kansas. It appears the cattle were assessed in Texas at a value of $9,040 and in Kansas at a value of $23,375. All this was brought out before the commission by plaintiffs themselves. We are not prepared to say what the effect of all this was on the commission.

Our question is whether the evidence warranted the trial court in finding that the cattle were temporarily outside the limits of Kansas on March 1, 1951. The conceded facts about which there is no dispute warrant such a finding.

The judgment of the trial court is affirmed.

THIELE, J., concurs in the result.